IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>JEFF LIVINGSTON,<br><br>    Defendant.<br>_____/ | CASE NO. CR-F-09-273 LJO<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS SUPERCEDING INDICTMENT**<br>(Doc. 56) |

### INTRODUCTION

Defendant Jeff Livingston ("Mr. Livingston") moves to dismiss the indictment against him on several grounds. As to each mail fraud count (counts 1-6), Mr. Livingston moves to dismiss on grounds that the indictment fails to allege or provide adequate notice of (1) the alleged scheme; (2) the "false and fraudulent pretenses, representations, and promises" made as part of the alleged scheme; and (3) the property allegedly obtained as part of the alleged scheme. As to each count of theft by an employee of a gaming establishment, Mr. Livingston moves to dismiss on grounds that the indictment fails to establish jurisdiction and that the government cannot establish jurisdiction as a matter of law. Having considered the superceding indictment, the parties arguments, and the applicable legal authorities, this Court finds that the superceding indictment contains sufficient detail to adequately inform Mr. Livingston of the charges against him and to allow him to claim double jeopardy. In addition, Mr. Livingston fails to establish that the government cannot establish an essential element as a matter of law. Accordingly, Mr. Livingston's motion to dismiss is DENIED in full.

## BACKGROUND

### Charges

A September 23, 2010 superceding indictment charges Mr. Livingston with six counts of mail fraud (counts 1-6), in violation of 18 U.S.C. §1341, and three counts of "theft by an officer or employee, in violation of 18 U.S.C. §1168(b) (counts 7-9).[1]

### Mail Fraud Charges

Mr. Livingston is charged with mail fraud in counts 1-6. In describing the alleged fraudulent scheme for obtaining property, the indictment alleges:

> While he was Chuckchansi's general manager, the defendant engaged in a scheme to defraud Chuckchansi by making a series of personal purchases, for the benefit of himself and other private individuals using Chukchansi money, funds, and assets. Defendant purposed to make such purchases for the benefit of Chukchansi and caused Chukchansi to pay for such purchases. Nevertheless, defendant ultimately retained the goods and benefits for himself and others who were not entitled to such goods and benefits. Such personal purchases, good, and benefits included, but were not limited to, vacation travel, down payments on personal vehicles, golf packages, jewelry, and autographed sports and music memorabilia.

Superceding Indictment, ¶4. The superceding indictment further alleges:

> As part of his scheme to defraud, the defendant abused trust and authority he had received from Chukchansi, including his managerial authority to make certain business purchases for the benefit of Chukchansi. As general manager, the defendant was familiar with how his purchases were billed to Chukchansi and how Chukchansi paid such bills. Defendant knew that he was not authorized to use Chukchansi's business funds to make personal purchases for his personal benefit and retention. Nonetheless, defendant directed Chukchansi staff to pay for certain personal purchases and knew that Chukchansi paid for such purchases.

*Id.* at ¶5. The superceding indictment alleges that Mr. Livingston "utilized various means to make his personal purchases, including but not limited to, using his Chukchansi corporate credit card, using staff member's corporate credit card, and acquiring items and then having Chukchansi billed for the items." *Id.* at ¶6. The superceding indictment also explains how Mr. Livingston caused credit card companies and other vendors to "use the United States mails" to deprive Chukchansi of money and property.

As to the specific mailings that are identified for each count, the superceding indictment contains the following chart:

---

[1] A July 23, 2009 two-count indictment charged Mr. Livingston with two counts of violating 18 U.S.C. §1168(b). The original charges are included in the superceding indictment as counts 7 and 8.

2

| COUNT | APPROXIMATE DATE MAILED | DESCRIPTION OF ITEM MAILED |
|---|---|---|
| ONE | December 1, 2006 | Chukchansi check (Bank of America # 064576) in the amount of $6,065.00 mailed to Kitahara Foundation in Fresno, California |
| TWO | June 25, 2007 | Bank of America commercial card company statement (statement date: June 25, 2007) mailed to Chukchansi in Coarsegold, California |
| THREE | July 5, 2007 | Chukchansi check (Bank of America #070217) in the amount of $36,982.03 mailed to Bank of America in Wilmington, Delaware |
| FOUR | July 25, 2007 | Bank of America commercial card company statement (statement date: July 25, 2007) mailed to Chukchansi in Coarsegold, California |
| FIVE | October 25, 2007 | Bank of America commercial card company statement (statement date: October 25, 2007) mailed to Chukchansi in Coarsegold, California |
| SIX | November 27, 2007 | Chukchansi check (Bank of America #073887) in the amount of $49,195.72 mailed to Bank of America in Wilmington, Delaware |

**Theft by An Officer or Employee of Gaming Establishment on Indian Lands Charges**

Mr. Livingston is charged with three counts (count 7-9) of violating 18 U.S.C. §1168(b), entitled "theft by an officer or employee of a gaming establishment on Indian lands." Each count alleges that Mr. Livingston was an employee of a gaming establishment, Chuckchansi, that the gaming establishment was owned and operated by an Indian tribe, the Picayune Rancheria of the Chukchansi Indians ("Tribe"), pursuant to an ordinance approved by the National Indian Gaming Commission ("NIGC") and that Mr. Livingston stole from the Casino. The superceding indictment specifies that Mr. Livingston is alleged to have used a corporate credit card to purchase down payments on personal vehicles (count seven); used a corporate credit card to purchase a Hawaiian vacation packaged used by him for his personal benefit

3

(count eight); and used a corporate credit card to purchase sports and music memorabilia for his personal benefit (count nine).

## Motion for Bill of Particulars

On January 31, 2010, this Court denied defendants' motion for a bill of particulars, in part, because of the information provided by the government in a November 17, 2010 letter. In that letter, the government provided specific additional information to the defense concerning the specific property that is the subject of counts 1-6 and 9, including:

| | |
|---|---|
| Count 1: | Check in payment for, among other things, a diamond necklace purchased for $1,000 at a Kitahara Foundation auction in and about October 2006. |
| Count 2: | Bank of America commercial card statement including, among other charges, a charge for a Hawaii vacation package purchased for $7,000 at a St. Agnes Medical Center Foundation event in and about May 2007. |
| Count 3: | Check in payment for, among other things, a Hawaii vacation package purchages for $7,000 at St. Agnes Medical Center Foundation event in and about May 2007. |
| Count 4: | Bank of America commercial card statement including, among other charges, amounting to $25,000 (consisting of charges in the amounts of $10,000, $10,000, and $5,000) for down payments on personal vehicles at Bret's Ford in and about June and July 2007. |
| Count 5: | Bank of America commercial card statement including, among other charges, a $15,500 charge (Gallery of Dreams) for sports and music memorabilia purchased at a Kitahara Foundation auction in and about October 2007 (consisting of a golf package, a signed photo, a fiddle, and a masters green jacket). |
| Count 6: | Check in payment for, among other things, $15,500 in sports and music memorabilia purchased at a Kitahara Foundation auction in and about October 2007 (consisting of a golf package, a signed photo, a fiddle, and a masters green jacket). |
| Count 9: | $15,500 in sports and music memorabilia purchased at a Kitahara Foundation auction in and about October 2007 (consisting of a golf package, a signed photo, a fiddle, and a masters green jacket). |

### STANDARD OF REVIEW

Mr. Livingston moves to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(2) and 12(b)(3). Mr. Livingston may bring a motion that the indictment fails to state an offense at any time during the pendency of the proceedings. Fed. R. Crim. P. 12(b) permits Mr. Livingston to raise any defense "that the court can determine without a trial of the general issue." *Id*.; *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986). "A pretrial motion is 'capable of determination' before trial if it involves questions of law rather than fact." *Id*. "Whether an information is sufficient to charge a defendant is a particular situation is a question of law."

*United States v. Linares*, 921 F.2d 841, 843 (9th Cir. 1990). Accordingly, this Court may decide whether the indictment fails as a matter of law.

An indictment shall "be a plain, concise, and definitive written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). An indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). A "legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and to enable him to plead double jeopardy." *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000). The "test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id*.

## DISCUSSION

### Mail Fraud

"The essential elements of mail fraud under 18 U.S.C. §1341 are: (1) a scheme to defraud; and (2) a knowing use of the mail to execute the scheme." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982). Mr. Livingston also cites to the Ninth Circuit Model Jury Instructions to set forth the elements of mail fraud. Pursuant to the current Ninth Circuit Model Jury Instruction 8.121, the following elements constitutes mail fraud:

> First, the defendant knowingly [participated in] [devised] [intended to devise] a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
>
> Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
>
> Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and
>
> Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.
>
> In determining whether a scheme to defraud exists, you may consider not only the

defendant's words and statements, but also the circumstances in which they are used as a whole.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained.

Mr. Livingston asserts that mail fraud counts contained in the superceding indictment are insufficient. Mr. Livingston argues that the superceding indictment contains conclusory statements that provide no notice of the conduct committed. Mr. Livingston faults the superceding indictment for failure to include "a single fact allege which identifies what, if anything, was conveyed, implied, or professed outwardly for 'Defendant to purport to make such purchases for the benefit of Chukchansi,' who it was said to, when it was said, the purchases it concerned, the 'private individuals' who received purchases or the Chukchansi staff that was directed to make the purchases." Mot., pp. 7-8. Mr. Livingston contends that the superceding indictment "provided no notice as to what scheme existed, and false and fraudulent pretenses, representations and promises were made, in relation to count 1, or any other mail fraud count." *Id*. at 8.

The government maintains that the superceding indictment is sufficient, because it unambiguously sets forth the necessary elements of mail fraud, adequately informs Mr. Livingston of the charge, and enables him to plead double jeopardy. This Court agrees.

"Indictments alleging a scheme to defraud must provide sufficient facts to fulfill the purposes of the indictment." *Buckley*, 689 F.2d at 897. The superceding indictment alleges that Mr. Livingston was the general manager of Chukchansi, and used his position as general manager to make a series of personal purchases, knowing that he was not authorized to use Chukchansi's corporate funds for such purchases. The superceding indictment alleges that from October 2006 through January 2008, Mr. Livingston caused and directed Chukchansi staff to pay for those personal purchases with business funds, thereby defrauding Chukchansi. Mr. Livingston is charged with using a corporate credit card to make personal purchases, directing staff to pay the corresponding credit card bill, and causing Chukchansi to pay vendors for personal items that Mr. Livingston obtained from the vendor. The government explains that by directing Chukchansi staff to account for these personal purchases as

6

business expenses, Mr. Livingston falsely and fraudulently represented and conveyed the pretense that the expenses were legitimate business expenses. Moreover, the specific mailings are identified in the superceding indictment, as well as the objects of the charges.

When "construed according to common sense, and interpreted to include facts which are necessarily implied," *Givens*, 767 F.2d at 584, the superceding indictment provides a specific description of Mr. Livingston's alleged scheme to defraud, the manner and means he used to execute the scheme, and the use of mails to execute the scheme. For these reasons, this Court finds the superceding indictment to be sufficient as to the mail fraud charges. Accordingly, Mr. Livingston's motion to dismiss these counts is denied.

**Theft by Employee of an Indian Gaming Establishment Counts**

In counts 7 through 9, Mr. Livingston is charged with theft by an employee of an Indian gaming establishment. The superceding indictment alleges that Mr. Livingston was an employee of a gaming establishment, that the gaming establishment was owned and operated by an Indian tribe pursuant to an ordinance approved by the NIGC, and that Mr. Livingston "did embezzle, abstract, purloin, willfully misapply, and take with the intent to steal" from the Casino.

Mr. Livingston argues that these counts fail for three reasons. First, Mr. Livingston asserts that the indictment is insufficient to establish jurisdiction, because there it fails to allege that: (1) the alleged thefts took place on Indian land; (2) the Casino was located on Indian land; and (3) the Casino was operated by or for, or licensed by, an Indian tribe. Second, Mr. Livingston argues that the government cannot establish an essential element because the government cannot establish that the Casino was operated on Indian land pursuant to an ordinance approved by the NIGC. Third, Mr. Livingston asserts that the allegations of count 9 are insufficient. The Court considers each argument separately below.

*Jurisdictional Allegations*

Mr. Livingston argues that the superceding indictment is insufficient because there are no allegations that the theft took place on Indian lands, that the Casino was on Indian lands at the time in question, and that the Casino was operated by or for, or licensed by, an Indian tribe. As to the first two arguments, Mr. Livingston misconstrues this Court's September 1, 2010 order on Mr. Livingston's motion to dismiss ("September 2010 Order"). As to all arguments, Mr. Livingston erroneously attempts

7

to require the government to allege facts that are not essential elements of the crime charged. For the following reasons, Mr. Livingston's argument fails.

In counts 7 through 9, Mr. Livingston is charged with a violation of 18 U.S.C. §1168(b), which reads:

> Whoever, being an officer, employee, or individual licensee of a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission, embezzles, abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any moneys, funds, assets, or other property of such establishment of a value in excess of $ 1,000 shall be fined not more than $ 1,000,000 or imprisoned for not more than twenty years, or both.

Pursuant to this statute, the government must allege that: (1) Mr. Livingston was an officer, employee, or individual licensee of an gaming establishment; (2) the gaming establishment was operated by or for or licenced by an Indian tribe pursuant to an ordinance or resolution approved by the NIGC; and (3) Mr. Livingston embezzled, abstracted, purloined, willfully misapplied, took, or carried away with intent to steal, any moneys, funds, assets or other property of the gaming establishment of a value in excess of $1000. As set forth above, a "legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against which he must defend and to enable him to plead double jeopardy." *Hinton*, 222 F.3d at 672. As set forth above, the government alleges each of the elements of the statute in the superceding indictment sufficiently in the superceding indictment.

This Court's September 2010 Order did not require the government to allege additional elements beyond that which is provided in the statute. Indeed, the language cited by Mr. Livingston was either to reject an argument asserted by the government or to explain what the government must prove at trial. September 2010 Order, p. 14. The Court's September 2010 Order did not relate to whether the allegations of the indictment were sufficient.

Moreover, Mr. Livingston's arguments related to the definition of the term "Indian" are meritless. On its face, the statute does not require the members of the Indian tribe to satisfy the definition of "Indians" as defined in 25 U.S.C. §479. Mr. Livingston's arguments are unconnected to the essential elements of the crime and are tangential at best. Contrary to Mr. Livingston's assertions, the government is not required to allege that members of the Indian tribe are "Indians" pursuant to 25 U.S.C. §479.

*Whether the Government Can Establish An Essential Element as a Matter of Law*

Next, Mr. Livingston argues that the government cannot establish an essential element of the offense as a matter of law; namely, that Chukchansi was operated pursuant to an ordinance approved by the NIGC. The Court declines to dismiss on these grounds for the following reasons.

First, in a motion to dismiss, the Court assumes the allegations of the complaint as true. *Buckley*, 689 F.2d 893. Here, the government alleges that the gaming establishment was operated by or for or licenced by an Indian tribe pursuant to an ordinance or resolution approved by the NIGC. Because the government alleged the essential allegations sufficiently, and these allegations are assumed to be true, Mr. Livingston's motion fails.

Second, to the extent Mr. Livingston re-raises issues already addressed by this Court, this Court adopts the reasoning of the September 2010 Order to deny Mr. Livingston's motion. This Court found:

> [To establish] the element of this crime, the government must prove at trial beyond a reasonable doubt that Casino was on Indian land at the time in question. To carry his burden on this pre-trial motion to dismiss, Mr. Livingston must prove that the land was not "Indian lands" as a matter of law.
>
> The 1983 and 1987 Stipulated Judgments and the government's opinion letters raise an issue as to whether the land on which the Casino operated qualified as "Indian lands" pursuant to the IGRA during the relevant time period. Accordingly, this Court finds that Mr. Livingston fails to establish as a matter of law that the Casino did not operate pursuant to the NIGC's approval of a gaming ordinance which restricted gaming to take place on "Indian land" as defined by the IGRA.

September 2010 Order, pp. 14, 19. This Court cannot determine this issue as a matter of law, because it rests on unresolved questions of fact. This Court found that there are factual issues going to an essential element of the crime, requiring this Court to defer those issues to the ultimate fact-finder. *See, United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense). A "motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002); *see also United States v. Sampson*, 371 U.S. 75, 78-79 (1962) ("Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense."). The "unavailability of Rule 12 in determination of general issues of guilt or innocence ... helps ensure that the respective provinces of the judge and jury are respected...." *United States v. Nukida*, 8 F.3d 665, 670 (9th Cir.1993). Accordingly, Mr. Livingston's motion to

dismiss is denied, because he fails to carry his burden to prove that the government cannot establish this essential element of the crime as a matter of law.

*Count Nine*

Finally, Mr. Livingston argues that the superceding indictment is insufficient as to count 9, because there "is not a single fact contained in the indictment that provides Mr. Livingston notice of what the grand jury found he stole or what property jeopardy will attach to should Mr. Livingston be acquitted." This Court finds the superceding indictment to be sufficient. The superceding indictment alleges that Mr. Livingston used a corporate credit card to purchase sports and music memorabilia for his personal benefit. The reference "sports and music memorabilia" is clear and provides adequate detail to inform Mr. Livingston of the charges against him. *See, Hinton*, 222 F.3d at 672. When read in its entirety, one can surmise that the allegations in count 9 relate to the allegations of count 6, providing further detail about when the sports and music memorabilia was purchased and the amounts paid. *See, Givens*, 767 F.2d at 584. This information is more than sufficient to survive Mr. Livingston's motion to dismiss.

### CONCLUSION

For the foregoing reasons, this Court DENIES in full Mr. Livingston's motion to dismiss. The February 11, 2011 hearing on this motion is VACATED.

IT IS SO ORDERED.

**Dated:   February 2, 2011**                    **/s/ Lawrence J. O'Neill**
                                                  UNITED STATES DISTRICT JUDGE